UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AD RENDON COMMUNICATIONS, INC., <br><br> Plaintiff, <br><br> -v- <br><br> LUMINA AMERICAS, INC., <br><br> Defendant. | Case No. 04-CV-8832 (KMK) <br><br> OPINION AND ORDER |

Appearances:

Michael Robert Gordon, Esq.
Kirkpatrick & Lockhart, Nicholson Graham, LLP
New York, NY
*Counsel For Plaintiff*

Eric Heichel, Esq.
Eiseman, Levine, Lehrhaupt & Kakoyiannis
New York, NY
*Counsel For Defendant*

KENNETH M. KARAS, District Judge:

## I. Introduction

On November 5, 2004, Plaintiff AD Rendon Communications, Inc. ("AD Rendon") filed this action against Defendant Lumina Americas, Inc. ("Lumina"). Defendant has moved to dismiss Plaintiff's claims for conversion and punitive damages pursuant to Fed. R. Civ. P. 12(c). For the following reasons, Defendant's Motion is granted without prejudice to replead.[1]

---

[1] Jurisdiction over this case is based on diversity. *See* 28 U.S.C. § 1332. Plaintiff is a citizen of California, Virginia, and Florida; Defendant is a citizen of Delaware and New York; and the Complaint seeks damages in excess of $75,000. (Compl. ¶ 3)

## II. Background

Plaintiff, AD Rendon, is a business that provides strategic marketing services. (Compl. ¶ 6) Defendant, Lumina, is a business that provides integrated marketing solutions for American Hispanic and Latin markets. (Compl. ¶ 7)

The Parties reached an agreement, memorialized in a letter dated February 24, 2003, whereby they would work together for the benefit of certain of Plaintiff's clients ("the Agreement"). (Compl. ¶¶ 8-9) Pursuant to the Agreement, Defendant agreed to provide bookkeeping services to Plaintiff relating to certain clients, which included overseeing the preparation and maintenance of Plaintiff's financial records. (Compl. ¶ 10) In turn, Plaintiff would share with Defendant the profits from the work done for those clients. (Compl. ¶ 10)

Plaintiff alleges that from May 12, 2002 to February 28, 2003, Defendant breached the Agreement by "not properly preparing or maintaining AD Rendon's books and records, deliberately misstating AD Rendon's financial information, overcharging AD Rendon's payroll fees, and misappropriating AD Rendon's funds by accessing AD Rendon's bank account without permission and removing monies belonging to AD Rendon." (Compl. ¶ 12)

Specifically, Plaintiff alleges that during this time period, Defendant transferred $1,149,689.50 from Plaintiff's bank account to one or more bank accounts controlled by Defendant. (Compl. ¶ 13) Plaintiff demanded the return of the monies. To date, however, Plaintiff alleges that Defendant has returned only $819,061.33, leaving a balance of $330,628.17. (Compl. ¶ 13) Plaintiff allegedly demanded return of the remaining balance to no avail. (Compl. ¶ 14) Additionally, Defendant allegedly overcharged Plaintiff for payroll in excess of $101,439.34 (Compl. ¶ 16a), wrongfully accepted a $20,000 refund check from an advertising

company previously employed by Plaintiff (Compl. ¶ 16b), and retained $165,000 given to Defendant for the purpose of making a media-related payment on behalf of Plaintiff which Defendant never made. (Compl. ¶ 16c)

Plaintiff alleges it suffered economic damages as a result of Defendant's actions under two theories: (1) breach of contract in the amount of $617,067.50 and (2) conversion in the amount of $515,628.17. Plaintiff also seeks punitive damages for its conversion claim. Plaintiff's breach of contract claim is based on the allegations that Defendant did not properly prepare and maintain Plaintiff's financial records, misstated Plaintiff's financial information, overcharged Plaintiff's payroll fees, and misappropriated Plaintiff's funds. (Compl. ¶ 21) Plaintiff's conversion claim is based on allegations that Defendant failed to return all of the $1,149,689.50 that it wrongfully transferred from Plaintiff's bank account to its own, wrongfully accepted a $20,000 refund check, and wrongfully retained a $165,000 vendor payment. (Compl. ¶¶ 24-28)

### III. Discussion

#### A. Legal Standard

In deciding a motion under Fed. R. Civ. P. 12(c), the Court "appl[ies] the same standard as that applicable to a motion under Rule 12(b)(6), accepting the allegations contained in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party." *Scala v. American Airlines*, 249 F. Supp. 2d 176, 178 (D. Conn. 2003) (quoting *Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir. 1999) (citation omitted)). The Court "must limit its inquiry to the 'facts stated in the complaint.'" *W.B. David & Co. v. DWA Commc'ns*, No. 02 Civ. 8479, 2004 WL 369147, at *2 (S.D.N.Y. Feb. 26, 2004). A complaint should not be dismissed unless "it appears

3

beyond doubt that the plaintiff can prove no set of facts in support of his claim which will entitle him to relief." *Id.* (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." *Scala*, 249 F. Supp. 2d at 178 (quotation omitted).

B. Conversion Claim

Defendant argues that Plaintiff's conversion claim does not constitute a cause of action distinct from Plaintiff's breach of contract claim. Specifically, Defendant contends that Plaintiff's conversion claim is merely a more detailed rendition of its breach of contract claim. Furthermore, Defendant argues that because Plaintiff would be fully compensated for its alleged loss under its breach of contract claim, the conversion claim is not a separate injury.

The tort of conversion is the "'exercise of unauthorized dominion over the property of another in interference with a plaintiff's legal title or superior right of possession.'" *Citadel Mgmt. Inc. v. Telesis Trust, Inc.*, 123 F. Supp. 2d 133, 147 (S.D.N.Y. 2000) (quoting *Lopresti v. Terwilliger*, 126 F.3d 34, 41 (2d Cir. 1997)). Under New York law, a plaintiff must plead the following in order to assert a claim of conversion: "(1) the property subject to conversion is a specific identifiable thing; (2) plaintiff had ownership, possession or control over the property before its conversion; and (3) defendant exercised an unauthorized dominion over the thing in question, to the alteration of its condition or to the exclusion of the plaintiff's rights." *Moses v. Martin*, 360 F. Supp. 2d 533, 541 (S.D.N.Y. 2004) (quotation and citation omitted). Money may be subject to a conversion action so long as it is held in a "specific, identifiable fund and [subject to] an obligation to return or otherwise treat in a particular manner the specific fund in question."

4

*Id.* (quotation omitted).

However, it is well settled under New York law that "an action for conversion cannot lie where damages are merely sought for breach of contract." *Citadel Mgmt. Inc.*, 123 F. Supp. 2d at 148. "For a conversion claim to succeed in the context of a dispute regarding a contract, the breach of contract must result in some 'wrong' that is separately actionable." *Id.*; *see also Fraser v. Doubleday & Co.*, 587 F. Supp. 1284, 1288 (S.D.N.Y. 1984) ("[T]o sustain a conversion claim, a plaintiff must allege acts that are unlawful or wrongful as distinguished from acts that are a mere violation of contractual rights." (quotation omitted)).

Here, Plaintiff's conversion claim is duplicative of its breach of contract claim. Two cases in particular support this conclusion. In *W.B. David & Co.*, the defendants contracted to perform certain marketing services for the plaintiffs. 2004 WL 369147, at *1. The defendants billed the plaintiffs for services rendered and plaintiffs paid those bills. After becoming concerned about over-charging, the plaintiffs audited the defendants' account and discovered that the plaintiffs had paid for services that the defendants had billed but had not actually rendered. The court dismissed the plaintiffs' conversion claim as duplicative of its breach of contract claim because the defendants had merely accepted funds for services they were obligated to render, but did not render, under the contract. The court found that this was nothing more than a breach of contract claim. *Id.* at *5-6.

In *Citadel Mgmt. Inc.*, the plaintiff loaned $11 million to the defendants in return for defendants making periodic interest payments, assigning ownership of paintings to the plaintiff, and returning the money to the plaintiff at the end of the contract's term. 123 F. Supp. 2d 133. The defendants took the $11 million and then failed to perform any of their obligations under the

5

contract. In fact, the complaint alleged that the defendants immediately transferred the plaintiff's funds out of the plaintiff's account, failed to assign the paintings, failed to make any interest payments, and failed to transfer the $11 million back to the plaintiff on the agreed-to date. *Id.* at 149. The court in *Citadel Mgmt. Inc.* nonetheless dismissed the plaintiff's conversion claim as redundant because it sought compensation for the actions the defendants had taken with the money which they possessed solely as a result of breaching the contract. The court reasoned that any harm the plaintiff suffered from the defendants' actions stemmed from the defendants' breach of their contractual obligations. Furthermore, the court noted that the plaintiff would be fully compensated if it prevailed on its breach of contract claim. *Id*. at 149-50. Therefore, the court found the conversion claim duplicative and dismissed it.

Here, Defendant was obligated under the Agreement to manage Plaintiff's books on certain client accounts in return for a share of the profits. As part of that contractual obligation, Defendant handled some of Plaintiff's money. Plaintiff alleges that Defendant did not handle its money in the manner prescribed under the Agreement, but instead took some of the money for itself. Therefore, Plaintiff argues, it has stated a claim for conversion. However, Plaintiff's conversion claim is just another way of recovering for Defendant's alleged breach of the Agreement, and must be dismissed.

First, Plaintiff alleges that instead of using Plaintiff's money to manage Plaintiff's accounts, Defendant allegedly transferred $1,149,689.50 of Plaintiff's money to its own account and then refused to return it. That constitutes a failure to perform duties obligated under the Agreement. *See Citadel Mgmt. Inc.* at 149. Second, Plaintiff alleges that, under the Agreement, Defendant was supposed to transfer a $20,000 refund check to Plaintiff, but failed to do so.

6

Again, that is simply a violation of the Agreement between the Parties. *See New York Racing Ass'n, Inc. v. Meganews, Inc.*, No. 97 Civ. 1091, 2000 WL 307378, at *5 (E.D.N.Y. March 21, 2000) (finding conversion claim redundant of breach of contract claim where allegations were "easily reducible to misperformance or nonperformance under a contract"); *cf. Kubin v. Miller*, 801 F. Supp. 1101, 1119 (S.D.N.Y. 1992) (holding that conversion claim was distinct from breach of contract claim where the plaintiff alleged wrongdoing distinct from the breach of contract claim). Third, Plaintiff alleges that Defendant failed to use $165,000 of Plaintiff's money to pay a vendor, keeping the money for itself instead. Once again, this is merely a breach of the Agreement because Defendant had possession of the money in order to perform its duties under the contract, which it allegedly did not perform. *See Astroworks, Inc. v. Astroexhibit, Inc.*, 257 F. Supp. 2d 609, 618 (S.D.N.Y. 2003) (finding that conversion claim for wrongful appropriation of intellectual property was distinct from breach of contract claim but that conversion of ownership interest claim was not distinct from breach of contract claim because the ownership interest was created by the contract).

In the face of these cases, Plaintiff argues that a conversion claim is distinct from a breach of contract claim when a defendant wrongfully retains a plaintiff's money. In support of this claim, Plaintiff cites *Moses*, 360 F. Supp. 2d 533, and *Fabry's S.R.L. v. IFT Int'l, Inc.*, No. 02 Civ. 9855, 2003 WL 21203405 (S.D.N.Y. May 21, 2003). The plaintiff in *Moses* hired the defendants as her agents to handle all logistical aspects of her celebrity styling business. 360 F. Supp. 2d at 538. The defendants were supposed to collect payments from clients and remit the payments to the plaintiff, less a twenty percent commission. The defendants breached this agreement by not remitting the payments to the plaintiff. Furthermore, the defendants lied to the

7

plaintiff, saying that her clients had not paid for her services. Thereafter, the defendants provided "advances" to the plaintiff and claimed that the plaintiff had to reimburse the defendants for those "advances." *Id.* at 538-39. When the plaintiff discovered that her clients had indeed been paying for her services and that her agents were pocketing the money that was rightfully hers, she demanded that the defendants remit the payments to her. The defendants refused. *Id.* at 542. The court found that the defendants' continued retention of the payments that rightfully belonged to the plaintiff, after the plaintiff's repeated demands that they be remitted, constituted a conversion action distinct from plaintiff's breach of contract claim. *Id.* at 542.

A similar conclusion was reached in *Fabry's*. 2003 WL 21203405, at *4. The defendant in *Fabry's* was obligated under a contract to collect payments on behalf of the plaintiff and then transfer those payments, less fees and transfer costs, to the plaintiff. *Id.* at *4. The defendant did not transfer the payments to the plaintiff, so the plaintiff canceled the agreement and demanded transfer of the outstanding payments. Nonetheless, the defendant continued to collect and retain the payments without authorization. *Id.* The court held that the defendant's "continued retention of the payments collected from plaintiff's customers without authorization and in defiance of plaintiff's superior right of ownership is sufficient to establish conversion as an action distinct from any breach of contract claim." *Id.*

Neither *Moses* nor *Fabry's* sufficiently helps Plaintiff. Regarding *Moses*, the facts in the case at bar are more similar to the facts in *W.B. David & Co.* and *Citadel Mgmt. Inc.* than those in *Moses*. Unlike in *Moses*, there are no allegations here that Defendant engaged in a pattern of deceiving Plaintiff into believing that its clients were not paying for its services only for Plaintiff to confront its clients and discover that they had indeed paid. Nor are there allegations that

8

Defendant demanded payment from Plaintiff for "advances" which contractually belonged to Plaintiff but which Defendant falsely represented were payments from its own funds. Furthermore, Plaintiff does not allege that Defendant over-charged Plaintiff's clients in order to line its own pockets or submitted bogus receipts to Plaintiff's clients requiring them to pay for items that the company's principal intended to use personally. *Moses*, 360 F. Supp. 2d at 539. Here, Plaintiff simply alleges that Defendant transferred and retained monies that contractually belonged to Plaintiff. Upon demand, Defendant returned the majority of the monies to Plaintiff. Therefore, *Moses* is distinguishable from the case at bar.

*Fabry's* is also clearly distinguishable from this case. In *Fabry's*, the defendants continued to act as agents of the plaintiff, even after the agreement was cancelled, causing additional harm to the plaintiff beyond the breach of contract. Here, there are no allegations that Defendant has continued acting on behalf of Plaintiff after Plaintiff canceled the Agreement. Rather, Plaintiff alleges that Defendant misperformed under the contract and seeks relief from the Court by requiring Defendant to return the monies due to Plaintiff as the contract purportedly dictates.

Plaintiff's allegations also suggest that Defendant owed Plaintiff a duty separate from its duty to perform under the Agreement. Plaintiff pleads that it placed its trust in Defendant to oversee Plaintiff's financial books and records and that Defendant understood it was being trusted to perform those services. (Compl. ¶ 11) However, it is not alleged that Defendant had substantial discretion under the Agreement. Instead, Plaintiff alleges that Defendant was to pay vendors for services rendered on certain accounts and to manage payroll for those accounts. In turn, Plaintiff was to split the profits from those accounts with Defendant. The trust Plaintiff

placed in Defendant "had solely to do with [its] carrying out [its] obligations under the contract." *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 20 (2d Cir. 1996). Additionally, Defendant was "not relied upon for advice or the exercise of judgment based on superior information or professional expertise." *Id.* Consequently, Plaintiff has alleged no more than breach of a contractual duty.

Defendant also argues that Plaintiff's conversion claim is not distinct from its breach of contract claim because Plaintiff would be fully compensated for its loss if it prevailed on the breach of contract claim. Where no additional damages would be awarded for prevailing on the conversion claim, it cannot be distinct from the breach of contract claim. *See Citadel*, 123 F. Supp. 2d at 149-150; *see also New York Racing Ass'n, Inc.*, 2000 WL 307378, at *5 (holding conversion claim redundant of contract claim where conversion claim seeks same damages as sought under contract claim).

Here, Plaintiff claims that Defendant improperly transferred $1,149,689.50 from Plaintiff's account. Under its breach of contract claim, Plaintiff avers that Defendant did not properly prepare and maintain Plaintiff's financial records, misstated Plaintiff's financial information, overcharged Plaintiff's payroll fees, and misappropriated Plaintiff's funds. (Compl. ¶ 21) Plaintiff states generally without explanation that it is seeking $617,067.51 in damages under breach of contract.

Under its conversion claim, Plaintiff seeks $515,628.17 in damages. That number is reached by subtracting the $819,061.33 that Defendant returned to Plaintiff out of the $1,149,689.50 that Defendant allegedly wrongfully transferred from Plaintiff's account, to reach an outstanding balance of $330,628.17. Plaintiff adds the $20,000 refund check and the

$165,000 vendor payment that Defendant allegedly unlawfully retained, for a total of $515,628.17. However, this is simply a subset of the damages sought in the breach of contract claim. Therefore, Plaintiff would be fully compensated if it were to recover under the breach of contract claim, and the conversion claim is duplicative.

However, courts have held that if the plaintiff can recover punitive damages under a conversion claim and cannot recover punitive damages under a breach of contract claim, then the punitive damages constitute unique recovery under the conversion claim and the claim is not duplicative of the breach of contract claim. *See Pilliard v. Sotheby's, Inc.*, No. 95 Civ. 7776, 1997 WL 381795, at *7 (S.D.N.Y. July 10, 1997) (holding conversion claim distinct from breach of contract claim because plaintiff could recover punitive damages under conversion and not breach of contract claim and because there was a colorable argument that the defendant acted recklessly), *mot. for recons. granted on other grounds*, No. 95 Civ. 7775, 1998 WL 126060, at *2 (S.D.N.Y. March 19, 1998); *cf. Fraser*, 587 F. Supp. at 1288 (holding conversion claim failed because record did not support a conclusion that alleged conversion was accomplished with malice or reckless disregard). As discussed below, Plaintiff cannot recover punitive damages on either its breach of contract or conversion claim. Therefore, its conversion claim must fail.[2]

---

[2]In its Reply, Defendant raises two additional arguments for why Plaintiff's conversion claim should fail: (1) the funds Plaintiff contends are subject to the conversion claim were not segregated in a separate account and (2) Plaintiff never had possession of the allegedly wrongfully retained vendor payment.

Although the Court need not consider arguments raised for the first time in reply papers, *see Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Ed.*, 444 F.3d 158, 169 (2d Cir. 2006) (refusing to consider argument raised for the first time in reply brief), Plaintiff addressed the new arguments in its Sur-Reply. However, because the Court dismisses Plaintiff's conversion claim on other grounds, it need not address the new arguments raised by Defendant.

C. Punitive Damages

Plaintiff seeks punitive damages from its conversion claim based on its assertion that Defendant's actions were egregious and inherently harmful to the public.[3] Defendant argues that Plaintiff's punitive damages claim should be dismissed because Plaintiff cannot state an allegation of harm to the public generally.

Under New York law, "[w]here a lawsuit has its genesis in the contractual relationship between the parties, the threshold task for a court considering defendant's motion to dismiss a cause of action for punitive damages is to identify a tort independent of the contract." *New York Univ. v. Cont'l Ins. Co.*, 662 N.E.2d 763, 767 (N.Y. 1995). Once a court determines that a defendant's conduct is actionable as an independent tort then, under New York law, punitive damages claims are only permissible under the additional following circumstances: (1) the tortious conduct must be egregious; (2) the egregious conduct must be directed at plaintiff; and (3) it must be part of a pattern directed at the public generally. *Id.*; *see also Rocanova v. Equitable Life Assurance Soc'y of the U.S.*, 634 N.E.2d 940, 943-44 (N.Y. 1994).[4]

---

[3]In response to the Second Circuit's holding in *TVT Records v. The Island Def Jam Music Group*, 412 F.3d 82 (2d Cir. 2005), Plaintiff withdrew its claim that it is entitled to punitive damages under its breach of contract claim. (Letter from Michael R. Gordon to the Court, June 27, 2005)

[4]New York law allows for punitive damages in actions arising out of a contractual relationship "only 'if necessary to vindicate a public right.'" *TVT Records*, 412 F.3d at 94 (quoting *New York Univ.*, 662 N.E.2d at 767); *see also Kidder, Peabody & Co. v. IAG Int'l Acceptance Group N.V.*, No. 94 Civ. 4725, 1999 WL 11553, at *11 (S.D.N.Y. Jan. 13, 1999) ("It is evident . . . that New York law now only allows punitive damages in fraud claims arising from a contractual relationship where a plaintiff demonstrates egregious conduct directed to the plaintiff which is part of a 'pattern of similar conduct directed at the public generally.'" (citation omitted)); *Baxter Diagnostics, Inc. v. Novatek Med., Inc.*, No. 94 Civ. 5220, 1998 WL 665138, at *2 (S.D.N.Y. Sept. 25, 1998) (rejecting contention that public harm requirement does not apply to tort claims arising out of contractual relationships); *Rocanova*, 634 N.E.2d at 943-44. A

Plaintiff's conversion claim clearly has its genesis in the contractual relationship between the Parties. Defendant would not have had access to the monies in question without the contractual Agreement, and therefore, would not have had the opportunity to allegedly convert them. Indeed, Plaintiff admits that Defendant's "opportunity to steal arose from a contractual relationship in which Lumina was trusted to mind AD Rendon's financial store." (Pl.'s Resp. 2) Therefore, Plaintiff must meet the first prong of the *New York University/Rocanova* test for punitive damages and must state a tort claim independent of its breach of contract claim. As already discussed above, Plaintiff's conversion claim is not independent of its breach of contract claim. Consequently, Plaintiff cannot meet the first prong required for recovery of punitive damages and its punitive damages claim must fail. Although the court in *TVT Records* dismissed the plaintiff's punitive damages claims because the defendants' conduct was "not aimed at the general public," the court also noted that "dismissal of [plaintiff's] tort claims necessarily means that [defendant's] conduct was not 'actionable as an independent tort.'" 412 F.3d at 94, n.10. The court concluded that "[t]his [reason] warrants setting aside the award of punitive damages . . . ." *Id.*

---

public right is not implicated in an "isolated transaction incident to an otherwise legitimate business," rather, it requires a showing of a "gross and wanton fraud upon the public." *TVT Records*, 412 F.3d at 95 (quotation and citation omitted); *see also Topps Co. v. Cadbury Stani S.A.I.C.*, 380 F. Supp. 2d 250, 262 (S.D.N.Y. 2005); *Rocanova*, 634 N.E.2d at 943-44 (holding that "[p]unitive damages are not recoverable for an ordinary breach of contract as their purpose is not to remedy private wrongs but to vindicate public rights" and that "a private party seeking to recover punitive damages must not only demonstrate egregious tortious conduct . . . but also that such conduct was part of a pattern of similar conduct directed at the public generally." (citations omitted)).

## IV. Conclusion

For the reasons stated above, Defendant's Motion to Dismiss Plaintiff's claims for conversion and punitive damages is GRANTED without prejudice to replead. Plaintiff is to submit any amended complaint within thirty days of this Opinion and Order.

SO ORDERED.

Dated: June 7, 2006
New York, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE