UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AD RENDON COMMUNICATIONS, INC.,<br><br>                          Plaintiff,<br><br>  -v-<br><br>LUMINA AMERICAS, INC.,<br><br>                          Defendant. | Case No. 04-CV-8832 (KMK)<br><br>OPINION AND ORDER |

Appearances:

Todd Andrew Higgins, Esq.
Crosby & Higgins, LLP
New York, NY
*Counsel for Plaintiff*

Eric R. Levine, Esq.
Eric P. Heichel, Esq.
Eiseman, Levine, Lehrhaupt & Kakoyiannis, P.C.
New York, NY
*Counsel for Defendant*

KENNETH M. KARAS, District Judge:

       Plaintiff AD Rendon Communications, Inc. ("AD Rendon" or "Plaintiff") brings this action to recover money allegedly owed to it and wrongfully held by Defendant Lumina Americas, Inc. ("Lumina" or "Defendant"). The First Amended Complaint contains two causes of action. The first cause of action alleges that Lumina breached its contract with AD Rendon by transferring money without authorization, wrongfully withholding a refund check, failing to send a payment held for a media buy, and overcharging payroll expenses. The second cause of action, for conversion, is based on the same set of facts, excluding the payroll expenses. This conversion claim seeks both compensatory and punitive damages. With this Motion, Lumina

moves to dismiss the second cause of action, the conversion claim, along with AD Rendon's request for punitive damages.  For the reasons stated herein, the Motion is GRANTED in its entirety.

I.  Background

A. Facts

The Court will accept the following facts as true only for the purposes of this Motion. Plaintiff, AD Rendon, is a California corporation that provides strategic marketing services. (Am. Compl. ¶ 6.)  Defendant, Lumina, is a Delaware corporation offering integrated marketing solutions for U.S. Hispanic and Latin markets.  (Am. Compl. ¶ 8.)

In or about November 2001 through February 2002, Peter Davidson ("Davidson"), the co-founder and chairman of Lumina, approached Susana Rendon McHugh ("McHugh"), president of AD Rendon, and indicated that Lumina wanted to make an investment of approximately $1.3 million in AD Rendon.  (Am. Compl. ¶ 9.)  The two formed an agreement (the "Agreement"), which was "ratified, affirmed and clarified by letter dated February 24, 2003."  (Am. Compl. ¶ 14.)  AD Rendon's president wrote, "In an effort to clearly define the working relationship between AD Rendon Communications, Inc. and Lumina Americas, Inc. during this period of transition, I would like to reaffirm our agreement and method of working on the following areas . . . ."  (Am. Compl. Ex. A.)  Though the Complaint is sparse in its description of the contract details, a part of the Agreement between the Parties was that Lumina would provide certain services, "including first-class financial bookkeeping services which, in turn, included overseeing the preparation and maintenance of AD Rendon's financial books, records and payroll."  (Am. Compl. ¶ 15.)  In exchange, AD Rendon would pay Lumina a share

of AD Rendon's profits. *Id.*

Because of Lumina's representations regarding its investment in AD Rendon, AD Rendon agreed to work with Lumina for the benefit of two of AD Rendon's clients, JP Morgan Chase and GSD&M, and to grant Lumina access to AD Rendon's financial books, records, and accounts. (Am. Compl. ¶ 13.) Lumina also insisted that it be given signature authority over AD Rendon's bank account. (Am. Compl. ¶ 19.) McHugh agreed to allow two signatories from Lumina on the bank account, so long as they did not sign without McHugh's co-signature. (Am. Compl. ¶¶ 20-22.) Despite these stipulations, Plaintiff alleges that a fourth signor, Davidson, was added to the signature card, that Davidson signed the card as the "Managing Partner" of AD Rendon, and that the signature card stated that "any 2 of 4 [could sign] for all checks." (Am. Compl. ¶ 26.) Plaintiff further alleges that, without AD Rendon's consent or knowledge, Lumina secretly created a password for internet access to AD Rendon's bank account. (Am. Compl. ¶ 30.)

Plaintiff sets forth two claims against Lumina. The first is for breach of contract. AD Rendon claims that "[f]rom on or about May 12, 2002 through February 28, 2003, Lumina breached the Agreement by not properly preparing or maintaining AD Rendon's books and records, deliberately misstating AD Rendon's financial information, overcharging AD Rendon's payroll fees, and misappropriating AD Rendon's funds by accessing AD Rendon's bank account without permission and removing monies belonging to AD Rendon." (Am. Compl. ¶ 63.) AD Rendon also alleges that in breach of the Agreement Lumina used its internet access and signatory authority to transfer funds, without authorization, from AD Rendon's account to Lumina's account. (Am. Compl. ¶¶ 31-32, 35-36.) Specifically, AD Rendon alleges that in

3

breach of the Agreement Lumina transferred $1,149,689.50 from AD Rendon's account to an account controlled by Lumina.  (Am. Compl. ¶ 64(a).)  AD Rendon did not learn of Lumina's internet access to its account until mid-March 2003 (Am. Compl. ¶ 33), but upon discovery of this fact, AD Rendon made repeated demands for Lumina to return the monies.  Between the months of March and June 2002, Lumina returned $819,061.33, leaving $330,629.17 unreturned.  (Am. Compl. ¶¶ 35-36.)   AD Rendon seeks the return of the remaining $330,629.17.

Additionally, AD Rendon claims that Lumina breached the Agreement with AD Rendon when Lumina wrongfully accepted a $20,000 refund check from Delta Media, which should have been paid to AD Rendon.  (Am. Compl. ¶¶ 39, 64(b).)  Lumina allegedly also retained $165,000 that AD Rendon gave it to purchase a "media buy" on AD Rendon's behalf.  (Am. Compl. ¶¶ 51, 54, 64(c).)  The purchase was never executed, though AD Rendon allegedly sent repeated demands to Davidson for proof that the media ran.  (Am. Compl. ¶ 59.)  Finally, AD Rendon claims that Lumina overcharged AD Rendon for payroll in excess of $101,439.34.  (Am. Compl. ¶ 64d.)  According to AD Rendon, each of these incidents was in breach of Lumina's duties under the Agreement.  In total, as a result of the alleged breach of contract, AD Rendon claims to have suffered damages of at least $617,067.51.  (Am. Compl. ¶ 65.)

AD Rendon's second claim for relief is for conversion.  Paragraphs sixty-six through ninety of the Complaint set forth the allegations that AD Rendon believes constitute its conversion claim.  Notably, the facts alleged to make up the conversion claim mirror those facts set forth in AD Rendon's breach of contract claim.  Thus, AD Rendon seeks relief based on conversion for the $330,628.17 unreturned from Lumina's wrongful transfer of $1,149,689.50, the wrongfully accepted $20,000 Delta Media check, and the retained $165,000 media payment

that was to be made on AD Rendon's behalf.  (Am. Compl. ¶¶ 75, 78, 84.)

In short, Plaintiff's conversion claim lists the same allegations set forth in its breach of contract claim but adds that Lumina "engaged in a deliberate and malicious scheme to steal funds belonging to AD Rendon."  (Am. Compl. ¶¶ 66-67.)  AD Rendon claims that the $1,149,689.50 transferred to Lumina's account without authorization and the $330,618.17 which remained after Lumina returned $819,061.33 of the amount transferred are specific, identifiable funds subject to conversion because they were in AD Rendon's bank account before they were wrongfully converted.  (Am. Compl. ¶ 71.)  AD Rendon further claims that Lumina's actions were malicious because, *inter alia*, Lumina:  (i) had no colorable right to the funds; (ii) used deceptive means to acquire the funds; (iii) accessed funds without authorization; (iv) established secret internet access; (v) gave false and misleading statements to conceal the transfer of funds; and (vi) acknowledged that it had money belonging to AD Rendon that needed to be returned.  (Am. Compl. ¶ 77.)  AD Rendon further alleges that Lumina poses a threat to engage in similar schemes to steal money from other businesses, and AD Rendon states, conclusorily, that Lumina's misconduct is directed at the public generally.  (Am. Compl. ¶ 87.)

In total, AD Rendon seeks conversion damages of $515,628.17, which includes the $330,618,17 that Lumina has left to return from its bank transfer, the $165,000 intended for a media buy never executed, and the $20,000 payment check wrongfully held by Lumina.  (Am. Compl. ¶ 91.)  In addition, AD Rendon claims that it suffered "economic damages and has been forced to incur expenses related to this lawsuit, including but not limited to forensic accounting costs, and other costs, including lost business to AD Rendon proximately caused by Lumina's misconduct" in an amount believed to exceed $500,000.  (Am. Compl. ¶ 93.)  AD Rendon also

5

seeks punitive damages in the amount of $5,000,000. (Am. Compl. ¶ 94D.)

### B. Procedural History

This is the second motion to dismiss in this case. On June 7, 2006, Lumina moved to dismiss the conversion and punitive damages claims contained in the initial complaint pursuant to Federal Rule of Civil Procedure 12©. The bases for Lumina's first motion to dismiss were the same as those contained in the instant motion. Lumina argued that AD Rendon's conversion claim did not constitute a cause of action distinct from AD Rendon's breach of contract claim, that AD Rendon would be fully compensated for its alleged loss under the breach of contract claim, and that AD Rendon's claim for punitive damages should be dismissed. *See AD Rendon Commc'ns, Inc. v. Lumina Americas, Inc.*, No. 04-CV-8832, 2006 WL 1593884, at *2, *7 (S.D.N.Y. June 7, 2006). The Court agreed, granting Lumina's motion to dismiss in its entirety, but permitting AD Rendon to file an amended complaint in order to correct the deficiencies. *Id*. at *3.

## II.  Discussion

### A. Standard of Review

Lumina's motion is brought under Fed. R. Civ. P. 12(b)(6). The Supreme Court has recently held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle-[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (citations omitted and second alteration in original). In *Bell Atlantic*, *id.* at 1964-69, the Supreme Court also abandoned reliance on the oft-cited line from *Conley v. Gibson* that, "a

complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief[,]" 355 U.S. 41, 45-46 (1957).  As the Court explained, a literal application of *Conley*'s "no set of facts" rationale is improper because "a wholly conclusory statement of claim would survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some 'set of [undisclosed] facts' to support recovery."  *Bell Atl.*, 127 S. Ct. at 1968.  Instead, the Court emphasized that "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . [,]" *id.* at 1965, and "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint[,]" *id.* at 1969.  Plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  *Id.* at 1974.  If it "ha[s] not nudged [its] claims across the line from conceivable to plausible, [its] complaint must be dismissed."  *Id.*; *see also Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) ("After careful consideration of the Court's opinion and the conflicting signals from it that we have identified, we believe the Court is not requiring a universal standard of heightened fact pleading, but is instead requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible.").

      When considering a Rule 12(b)(6) motion, a court must limit itself to facts stated in the complaint, documents attached to the complaint, and documents incorporated into the complaint via reference.  *See Newman & Schwartz v. Asplundh Tree Expert Co.*, 102 F.3d 660, 662 (2d Cir. 1996) (citation omitted).  The Court will accept as true Plaintiff's non-conclusory allegations and draw all reasonable inferences in Plaintiff's favor.  *See Mills v. Polar Molecular Corp.*, 12 F.3d

1170, 1174 (2d Cir. 1993); *Blimpie Int'l, Inc. v. Blimpie of the Keys*, 371 F. Supp. 2d 469, 470-71 (S.D.N.Y. 2005). At this stage, the Court is not concerned with weighing the evidence that would be presented at trial. *See Chosun Int'l, Inc. v. Chrisha Creations, Ltd.*, 413 F.3d 324, 327 (2d Cir. 2005).

      B. Plaintiff's Conversion Claim

Lumina argues that AD Rendon's conversion claim remains duplicative of its breach of contract claim despite the new allegations that AD Rendon included in the First Amended Complaint. According to Lumina, the additional paragraphs added in AD Rendon's Amended Complaint do not convert the breach of contract claim into a tort claim. Furthermore, Lumina argues that the conversion claim damages are only a subset of those damages sought in its breach of contract claim and that AD Rendon would be fully compensated if it were to recover under the breach of contract claim.

In New York, conversion is "the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights." *Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 403-04 (2d Cir. 2006).[1] For an action in conversion to lie when the original possession of the property is lawful, a plaintiff must make a demand for the allegedly converted property and the possessor must refuse. *See Camp Summit of Summitville, Inc. v. Visinski*, No. 06-CV-4994, 2007 WL 1152894, at *9 (S.D.N.Y. April 16, 2007). Moreover, to establish a claim for conversion, a plaintiff must show that: "(1) the property subject to conversion is a specific identifiable thing; (2) plaintiff had ownership, possession or

---

[1] New York state substantive law applies under *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).

control over the property before its conversion; and (3) defendant exercised an unauthorized dominion over the thing in question, to the alteration of its condition or to the exclusion of the plaintiff's rights." *Moses v. Martin*, 360 F. Supp. 2d 533, 541 (S.D.N.Y. 2004) (internal quotation marks and citation omitted).

However, even if a plaintiff meets all of the elements of a conversion claim, the claim will still be dismissed if it is duplicative of a breach of contract claim.[2] *See Wechsler v. Hunt Health Sys., Ltd.*, 330 F. Supp. 2d 383, 431 (S.D.N.Y. 2004) (noting that a conversion claim may be dismissed as duplicative of a contract claim even though the conversion claim "satisf[ies] the technical elements of that tort" (internal quotation marks and citation omitted)); *Richbell Info. Servs., Inc. v. Jupiter Partners*, 765 N.Y.S.2d 575, 590 (App. Div. 2003) (holding that plaintiff's action for conversion, "while satisfying the technical elements of that tort, was properly dismissed as duplicative of the insufficient contract claims" (citations omitted)).

In determining whether a conversion claim is duplicative of a breach of contract claim, courts look both to the material facts upon which each claim is based and to the alleged injuries for which damages are sought. Thus, "a tort cause of action that is based upon the same facts underlying a contract claim will be dismissed as a mere duplication of the contract cause of action . . . ." *Reade v. SL Green Operating P'ship*, 817 N.Y.S.2d 230, 231 (App. Div. 2006); *see also Command Cinema Corp. v. VCA Labs, Inc.*, 464 F. Supp. 2d 191, 199 (S.D.N.Y. 2006) ("A conversion claim may only succeed if the party alleges a wrong that is distinct from any contractual obligations."); *Alliance Group Servs., Inc. v. Grassi & Co.*, 406 F. Supp. 2d 157,

---

[2]Lumina is only challenging the legal viability of Ad Rendon's conversion claim. The contract claim is not presently at issue.

170 (D. Conn. 2005) ("Where plaintiffs have merely repeated . . . their breach of contract claims and called them conversions, the conversion claims must fail." (internal quotation marks omitted)). And, similarly, a conversion claim will "be deemed redundant when damages are merely being sought for breach of contract." *Rolls-Royce Motor Cars, Inc. v. Schudroff*, 929 F. Supp. 117, 124 (S.D.N.Y. 1996) (internal quotation marks omitted); *see also Alliance Group Servs.*, 406 F. Supp. 2d at 170 ("An action for conversion cannot be validly maintained where damages are merely being sought for breach of contract." (internal quotation marks omitted)). Here, Ad Rendon's conversion claim suffers from both of these deficiencies.

First, the same facts make up AD Rendon's contract claim and its conversion claim. In both its breach of contract and conversion claims, AD Rendon alleges that Lumina acted wrongfully by withholding and accepting monies that contractually belonged to AD Rendon. Specifically, in both causes of action, AD Rendon claims that Lumina wrongfully transferred money from its account without authorization and failed to return all of the money it took, that it accepted a refund check that should have been given to AD Rendon, and that it retained money that it should have forwarded for a media buy. Any doubt that the loss of the $330,628.17, the $20,000 check and the $165,000 media buy is each alleged to be connected to a breach of the Agreement is eliminated by Paragraph 64 of the Amended Complaint.[3] Second, based on these

---

[3] Paragraph 64, in pertinent part, reads:
"Specifically, Lumina breached the Agreement by:
(a) As described in paragraphs 19 through 38, by transferring, without authorization, $1,149,689.50 of funds from AD Rendon's bank account to one or more bank accounts controlled by Lumina. Lumina returned only $819,061.33, refusing to return the remaining $330,628.17;
(b) As described in paragraphs 39 through 50, by wrongfully accepting a $20,000 Delta Media refund check that was the

overlapping allegations, both the conversion and breach of contract claims seek redress for virtually the same damages.  The only difference is that the conversion damages omit the payroll excess, meaning only that the alleged conversion damages are a subset of, and largely duplicate, the alleged breach of contract damages.  Thus, if Plaintiff were to recover under both claims, it would in effect be paid twice.

Plaintiff argues, however, that both a conversion claim and a contract claim may exist where actions are unlawful or wrongful as opposed to simple violations of contractual rights. (Pl's Mem. in Opp'n to Def's Mot. Dismiss 9 ("Pl.'s Mem.") (citing *Moses*, 360 F. Supp. 2d at 541)).  Arguing by analogy, Plaintiff cites cases in support of its view that a conversion claim may be distinct from a breach of contract claim where actions are wrongful.  For example, as it did in Round One of this battle, AD Rendon contends that this case is similar to *Fabry's S.R.L. v. IFT Intern., Inc.*, No. 02 Civ. 9855, 2003 WL 21203405 (S.D.N.Y. May 21, 2003).  In *Fabry's*, plaintiff and defendant had an agreement whereby plaintiff, Fabry's, would sell Italian merchandise and defendant, IFT, would act as Fabry's agent to collect payments and manage

---

> property of or should have been made payable to AD Rendon;
> (c) As described in paragraphs 51 through 59, by retaining $165,000 that was intended for a media related payment on behalf of AD Rendon, which Lumina has never paid; and
> (d) By overcharging AD Rendon for payroll in excess of $101,439.34 during the period of the Agreement.
> (e) By accepting funds from AD Rendon for the purpose of purchasing media and then conditioning the actual purchase of that media on AD Rendon's committing to continuing to do additional business with Lumina.  This added condition was demanded by Lumina on March 31, 2003, after AD Rendon had already discovered Lumina's unlawful conduct.  AD Rendon refused to sign additional agreements with Lumina, Lumina did not return the funds paid for the media and, upon information and belief, the media in question was never purchased."

accounts. *Id*. at *1. Pursuant to the agreement, IFT would then transfer the payments to Fabry's less fees and transfer costs. *Id*. IFT received $354,450.78 in 2002 in payments but neglected to forward the money to Fabry's. *Id*. Fabry's subsequently terminated its agreement with IFT. *Id*. IFT collected an additional $122,489.59 after termination of the contract which it also failed to forward to Fabry's. *Id*. at *2. The court in *Fabry's* held that the defendant's "continued retention of the payments collected from plaintiff's customers without authorization and in defiance of plaintiff's superior right of ownership is sufficient to establish conversion as an action distinct from any breach of contract claim." *Id*. at *4.

As this Court noted in its consideration of AD Rendon's first motion to dismiss, *Fabry's* is distinguishable from this case because IFT continued to act as Fabry's agent and to cause harm after the contract was terminated. *AD Rendon*, 2006 WL 1593884, at *5. AD Rendon's Amended Complaint contains no allegations that Lumina acted on behalf of AD Rendon after termination of the Agreement. Instead, Plaintiff seeks to recover the amount it claims it is due as a result of Defendant's breach of contract.

Plaintiff also cites *Pilliard v. Sotheby's, Inc.*, No. 95 Civ. 7775, 1997 WL 381795, at *7 (S.D.N.Y. July 10, 1997), as another example of where the court ruled that the contract and conversion claims were not duplicative. Pilliard owned a jar, purportedly sculpted by the artist Gaugin, which Pilliard agreed to consign to Sotheby's for sale at auction. *Id*. at *1. Pilliard and Sotheby's entered into a consignment agreement that included a limited liability provision, which stated that liability would not exceed the "mean of its 'latest presale estimates.'" *Id*. The consignment receipt estimated the value of the jar to be between $80,000 and $100,000 but contained a paragraph stating that the value was subject to revision. *Id*. After Sotheby's

examined the jar and questioned its authenticity, it offered to return the jar to Pilliard. *Id*. at *2. Sotheby's later informed Pilliard by letter that it was unable to locate the jar. *Id*. Plaintiff then brought her claims for damages. *Id*.

*Pilliard* is also distinguishable from the instant case. In *Pilliard*, the conversion claim was based on improper conduct by Sotheby's in converting the jar, and the breach of contract claim was based on the limited liability provision in the agreement. *Id*. at *7. Furthermore, the court noted that the facts on which the two claims were based might differ, and on this basis, it allowed the conversion claim to proceed. *Id.* ("One theory of the case is that Sotheby's stole the Jar or lost the Jar, and then informed Plaintiff that the Jar was not authentic in an attempt to minimize damages . . . ."). In the present case, AD Rendon's conversion claim is not based on separate facts. Though the Amended Complaint states that Lumina acted maliciously, there is no allegation that Lumina lost funds or committed an extra wrong other than allegedly breaching its contractual agreement.

Similarly, Plaintiff relies upon *Astroworks, Inc. v. Astroexhibit, Inc.*, 257 F. Supp. 2d 609 (S.D.N.Y. 2003). In *Astroworks*, the court refused to dismiss a conversion claim where there was a wrongdoing that went beyond the breach of contract. *Id*. at 618. However, *Astroworks* is also distinguishable from this case. In *Astroworks*, the third-party defendant allegedly made misrepresentations prior to and independent of the breach of contract. *Id*. at 612. Here, AD Rendon makes no claim that there were false representations independent of the breach of contract. It bears noting, moreover, that the *Astroworks* court did dismiss a conversion claim that was found to be duplicative of a breach of contract claim. *Id*. at 618 n.13 ("[C]onversion of his ownership interest in the company. . . is duplicative of the breach of contract claim and does

not allege any additional wrongdoing.  The proper remedy for the denial of Zsidisin's 40% ownership interest is contract damages.").

This case is instead similar to *Citadel Mgmt., Inc. v. Telesis Trust, Inc.*, 123 F. Supp. 2d 133 (S.D.N.Y. 2000) and *Fraser v. Doubleday & Co.*, 587 F. Supp. 1284 (S.D.N.Y. 1984), cases in which the respective court dismissed the conversion claim as duplicative of the breach of contract claim.  In *Citadel Mgmt.*, plaintiff loaned $11 million to defendants in return for defendants making periodic interest payments, assigning ownership of paintings to plaintiff, and returning the money to plaintiff at the end of the contract's term.  123 F. Supp. 2d at 149.  Defendants took the $11 million and then failed to perform any of their obligations under the contract.  Instead, defendants immediately transferred plaintiff's funds out of plaintiff's account, failed to assign the paintings, failed to make any interest payments, and failed to transfer the $11 million back to plaintiff on the agreed-upon date.  *Id.*  Nevertheless, the court dismissed plaintiff's conversion claim as duplicative because any harm – no matter how intentional – stemmed directly from the breach of contract, and the damages sought only accounted for funds possessed as a result of the contract breach.  Furthermore, as in this case, plaintiff would have been fully compensated if it prevailed on its breach of contract claim.  *Id.*

In *Fraser*, plaintiffs had a book contract with the publisher defendant.  587 F. Supp. at 1286.  Pursuant to the contract, the publisher agreed to publish and sell an autobiography and was required pay plaintiffs a $20,000 advance charged against the book's future earnings.  Plaintiffs alleged that defendant breached several aspects of the publishing agreement and, in the process, converted money that was owed to plaintiffs.  *Id.*  The court found that, "[a]t most, plaintiffs ha[d] made out a case of inadvertence or oversight with respect to defendant's alleged

failure to promptly account for a relatively small sum of money and alleged improper deduction of certain amounts from plaintiffs' royalty contract." *Id*. at 1288.  Furthermore, the court held that to maintain a claim for conversion, plaintiffs were required to allege acts that were unlawful or wrongful, whereas plaintiffs "ha[d] merely repeated two of their breach of contract claims and called them 'conversions.'" *Id*.  The court ultimately decided to strike the conversion claim because plaintiffs' alleged conversion damages could be fully pursued under plaintiffs' breach of contract theory.  *Id*; s*ee also Cirri v. Daily News, L.P.*, No. 26512/03, 2005 WL 3076346, at *6 (N.Y. Sup. Ct. Feb. 7, 2005) ("[A]s plaintiffs predicate their conversion cause of action upon the identical allegations upon which their breach of contract cause of action is based, plaintiffs' claim alleging conversion merely restates [their] cause of action to recover damages for breach of contract . . . [and] [t]herefore . . . their duplicative conversion claim must be dismissed." (internal quotation marks and citations omitted) (first alteration in original)).

At its heart, AD Rendon's attempt to differentiate the original Complaint and the Amended Complaint derives from the new claim that Lumina allegedly acted with malice.  But, "[u]nder New York law a breach of contract – even an 'intentional' or 'malicious' breach of contract – does not give rise to a tort action." *Mayer v. Morgan Stanley & Co.*, 703 F. Supp. 249, 253 (S.D.N.Y. 1988); *see also Burlew v. Am. Mut. Ins. Co.*, 471 N.Y.S.2d 908, 912 (N.Y. App. Div. 1984) ("The allegations in the complaint of malice, wantonness and grossly negligent conduct and the conclusory claims in the affidavit, which are obviously made to buttress the suit for punitive damages, cannot convert the action from one in contract to one in tort." (citation omitted)).  For similar reasons, Plaintiff's allegations that Defendant "wrongfully" took money (Am. Compl. ¶ 71) and engaged in a "deliberate and malicious scheme" (Am. Compl. ¶ 67) are

not enough to convert the breach of contract into a conversion cause of action. Therefore, the Court grants Defendant's motion to dismiss the conversion claim.[4]

### C. Punitive Damages

Plaintiff seeks punitive damages in connection with its conversion claim.[5] In order to seek punitive damages in a claim arising from a breach of contract, Plaintiff was required – as a threshold matter – to properly allege that Defendant's conduct was actionable as an independent tort. *See New York Univ. v. Continental Ins. Co.*, 662 N.E.2d 763, 767 (N.Y. 1995) ("Where a lawsuit has its genesis in the contractual relationship between the parties, the threshold task for a court considering defendant's motion to dismiss a cause of action for punitive damages is to identify a tort independent of the contract."). For reasons stated above, the Court has determined that the Amended Complaint failed to allege conversion as an independent tort. Therefore, Plaintiff is not entitled to punitive damages in connection with Defendant's alleged conduct.

Even if Plaintiff had adequately alleged the independent tort of conversion, it was further required to properly allege the following three elements: 1) the tortious conduct was egregious; (2) the egregious conduct was directed at Plaintiff; and (3) the conduct was part of a pattern of conduct directed at the public generally. *See id.*; *see also Rocanova v. Equitable Life Assurance*

---

[4] Because the Court finds the conversion claim duplicative of the breach of contract claim, the Court need not address whether the funds allegedly stolen are specific and identifiable.

[5] In addition, Plaintiff seeks what it calls "economic damages," including "forensic accounting costs . . . lost business . . . and attorney's fees." (Am. Compl. ¶ 93.) While the Court notes that Plaintiff does not appear to have pled facts sufficient to attain such damages, *see Forrest v. Unifund Fin. Group, Inc.*, No. 04 Civ. 5151, 2005 WL 1087490, at *6 (S.D.N.Y. May 6, 2005) (noting that special damages must be specifically stated and should allege facts which predicate recovery and that attorney's fees are not usually available in absence of a contractual or statutory basis), Defendant does not move to dismiss these damage claims and the Court therefore will not rule on this issue.

*Soc'y of the U.S.*, 634 N.E.2d 940, 943-44 (N.Y. 1994). The Amended Complaint contains several allegations that essentially sound in fraud,[6] which makes Plaintiff's claim for punitive damages further deficient for its failure to plead these elements in accordance with the heightened pleading standard applicable to claims of fraud under Federal Rule of Civil Procedure 9(b).[7] Mere conclusory allegations of theft by fraud, such as those set forth by Plaintiff here, are insufficient. *See Alnwick v. European Micro Holdings, Inc.*, 281 F. Supp. 2d 629, 639 (E.D.N.Y. 2003) ("[C]onclusory allegations that defendant's conduct was fraudulent or deceptive are not enough." (quoting *Decker v. Massey-Ferguson, Ltd.,* 681 F.2d 111, 114 (2d Cir. 1982))). Because Plaintiff's punitive damages claim is inadequate for these independent reasons, the Court grants Defendant's motion to dismiss the punitive damages claim.

---

[6]For example, Plaintiff alleges that "Lumina's theft of funds is a danger that threatens the public generally in that Lumina remains a threat to engage in similar schemes to steal money from other businesses[,]" (Am. Compl. ¶ 87), "Lumina transferred [money] from AD Rendon's bank account to one or more bank accounts that Lumina*,* through false representations that it knew AD Rendon would believe and rely upon, controlled[,]" (Am. Compl.¶ 68), "Lumina's submission to AD Rendon of false and misleading financial statements which, upon information and belief, were intended to conceal from AD Rendon the transfer of funds from AD Rendon to Lumina[,]" (Am. Compl. ¶ 77), and "[u]pon information and belief, the goal of transferring funds into Lumina from other companies . . . was to falsely make Lumina's finances appear more robust financially and thus more attractive to investors or potential investors[,]" (Am. Compl. ¶ 90).

[7]Under Rule 9(b), "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed. R. Civ. P. 9(b). Specifically, the Second Circuit has "read Rule 9(b) to require that a complaint '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004) (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)).

### III. Conclusion

For the reasons stated above, Defendant's Motion to Dismiss Plaintiff's claims for conversion and punitive damages is GRANTED with prejudice. Plaintiff has already had two failed attempts at asserting colorable claims for conversion and punitive damages, and the Court finds that to be enough. *See Treppel v. Biovail Corp.*, No. 03 Civ. 3002, 2005 WL 2086339, at *12 (S.D.N.Y. Aug. 30, 2005) ("[T]he Court finds that leave to amend would be futile because plaintiff has already had two bites at the apple and they have proven fruitless."). The Clerk of the Court is directed to terminate the Motion (Docket No. 32).

SO ORDERED.

Dated:   October 9, 2007
         White Plains, New York

_____
KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE